JUDGE SWAIN    14 CV    9969

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

ROBERT PLUMA,

                       PLAINTIFF,

     vs.

NEW YORK CITY POLICE SERGEANT
CARL SORECO, NEW YORK CITY POLICE
OFFICER MEGHAN O'LEARY, NEW YORK CITY
POLICE OFFICER CHRISTOPHER VEGA, NEW
NEW YORK CITY POLICE OFFICER "JOHN DOE"
SHIELD NO. 26990, NEW YORK CITY POLICE
OFFICER "JOHN DOE" SHIELD NO. 29615, NEW
YORK CITY POLICE OFFICER "JOHN DOE"
SHIELD NO. 11395, NEW YORK CITY POLICE
OFFICER "JOHN DOE" SHIELD NO. 3076, NEW
YORK CITY POLICE OFFICER " JOHN DOE SECOND
PEPPER SPRAY OFFICER", NEW YORK CITY POLICE
OFFICER "JOHN DOE INCIDENT COMMANDER"
and NEW YORK CITY POLICE OFFICERS
"JOHN DOES 1-50", NEW YORK CITY POLICE
CHIEF OF PATROL JAMES HALL, NEW YORK CITY
POLICE CHIEF OF DEPARTMENT JOSEPH ESPOSITO,
NEW YORK CITY POLICE DEPUTY INSPECTOR
BRANDON DEL POZO, NEW YORK CITY POLICE
LIEUTENANT MARESCA, NEW YORK CITY POLICE
CHIEF THOMAS PURTELL, NEW YORK CITY POLICE
CHIEF STEVEN ANGER, NEW YORK CITY POLICE
CHIEF JAMES MCNAMARA, NEW YORK CITY POLICE
DEPUTY INSPECTOR DANIEL MULLIGAN, NEW YORK
CITY POLICE CAPTAIN WILLIAM GARDNER, NEW
YORK CITY POLICE CAPTAIN WILLIAM TAYLOR,
NEW YORK CITY POLICE ASSISTANT CHIEF
GALATI, NEW YORK CITY POLICE ASSISTANT
CHIEF WEDLIN, NEW YORK CITY POLICE
ASSISTANT CHIEF MORRIS, NEW YORK CITY
POLICE DEPUTY CHIEF SHORTELL, NEW YORK
CITY POLICE DEPUTY CHIEF QUINN, NEW YORK
CITY POLICE DEPUTY CHIEF MCCARTHY, NEW
YORK POLICE INSPECTOR MCHUGH, NEW
YORK CITY POLICE INSPECTOR BANE, NEW
YORK CITY POLICE DEPUTY INSPECTOR

INDEX NO.
ECF CASE

COMPLAINT
[JURY TRIAL
DEMANDED]



RECEIVED
DEC 17 2014
U.S.D.C. S.D. N.Y.
CASHIERS

1

LEHR, NEW YORK CITY POLICE DEPUTY
INSPECTOR TLOCZKOWSKI, NEW YORK CITY
POLICE LIEUTENANT GUZMAN, NEW YORK
CITY POLICE SERGEANT PERKINS, NEW YORK
CITY POLICE CAPTAIN RAYMOND, NEW YORK
CITY POLICE SERGEANT LAPLANCHE, NEW
YORK CITY POLICE SGT. SCIACCA, NEW
YORK CITY POLICE LIEUTENANT CARRARA,
NEW YORK CITY POLICE SERGEANT FALCONE,
NEW YORK CITY POLICE CAPTAIN CENTA,
NEW YORK CITY POLICE SERGEANT BARNES,
NEW YORK CITY POLICE SERGEANT
MONAHAN, NEW YORK CITY POLICE
CAPTAIN GRANDSTAFF, NEW YORK CITY
POLICE SERGEANT MULLANEY, NEW YORK
CITY POLICE LIEUTENANT JOE MILLER, NEW
YORK CITY POLICE SERGEANT VILLANUEVA,
NEW YORK CITY POLICE LIEUTENANT DIMEOLA,
NEW YORK CITY POLICE LIEUTENANT MARTI,
NEW YORK CITY POLICE SERGEANT SINGH,
NEW YORK CITY POLICE LIEUTENANT DINEDA

DEFENDANTS.

Plaintiff ROBERT PLUMA, by his attorneys, STECKLOW COHEN &
THOMPSON, complaining of the defendants, respectfully alleges as follows:

## I. PRELIMINARY STATEMENT

1.      Plaintiff ROBERT PLUMA brings this action for compensatory damages,

punitive damages and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988

for violations of his civil rights, as said rights are secured by said statutes and the

Constitutions of the State of New York and the United States.

2.      The Plaintiff ROBERT PLUMA was peaceably assembled at Zuccotti

Park on the evening of December 31, 2011, intending to welcome in the New Year with

his girlfriend, and with other citizens who believed in the goals of the Occupy Wall Street

2

movement. An overwhelming force of New York City Police officers was present. These officers initiated physical confrontations with other individuals at Zuccotti Park. The police officers needlessly escalated these confrontations into violence. In so doing, multiple police officers used metal fencing as a weapon to push the crowd. The police officers deployed pepper spray targeting the group of which Mr. Pluma was a part. The Plaintiff was injured when he was blinded by the pepper spray, pushed and fell, breaking his dominant hand in a way that required surgery and rehabilitation.

## II. JURISDICTION

**3.** This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(a)(3) and (a)(4) and the aforementioned statutory and constitutional provisions.

**4.** Plaintiff ROBERT PLUMA further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any and all State law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy that gives rise to the federally based claims and causes of action.

## III. VENUE

**5.** Venue is proper for the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1391(a), (b), and (c) and § 1402(b) because the claims arose in this district.

## IV. JURY DEMAND

**6.** Plaintiff ROBERT PLUMA respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## COMPLIANCE WITH GEN. MUN. LAW § 50-I

3

7.      A notice of claim was made and served upon the City of New York in compliance with section fifty-e of this chapter, and at least thirty days have elapsed since the service of such notice and adjustment or payment thereof has been neglected  or refused, and this action or special proceeding is commenced within one year and ninety days after the happening of the events upon which the claim is based.

## V. THE PARTIES

8.      Plaintiff ROBERT PLUMA ("the Plaintiff") is a resident of the State of New York.

9.      That at all times hereinafter mentioned, Defendant POLICE OFFICER MEGHAN O'LEARY ("Defendant POLICE OFFICER O'LEARY") was a duly sworn police officer of the New York City Police Department and was acting under the supervision of said department and according to her official duties.

10.      That at all times hereinafter mentioned, Defendant POLICE OFFICER CHRISTOPHER VEGA ("Defendant POLICE OFFICER VEGA") was a duly sworn police officer of the New York City Police Department and was acting under the supervision of said department and according to his official duties.

11.      That at all times hereinafter mentioned, the Defendant POLICE OFFICERS "John Does 1-50" were duly sworn police officers of the New York City Police Department and were acting under the supervision of said department and according to their official duties. Photographs of eight of the Defendant POLICE OFFICERS "John Does 1-50" are attached hereto as **Exhibit A.**

12.      That at all times hereinafter mentioned, Defendant POLICE OFFICER "John Doe" SHIELD NO. 26990 was a duly sworn police officer of the New York City Police Department and was acting under the supervision of said department and

4

according to his official duties. Defendant POLICE OFFICER "John Doe" SHIELD NO. 26690 can be seen on Page 8 of Plaintiff's **Exhibit A**, attached hereto.

13.     That at all times hereinafter mentioned, Defendant POLICE OFFICER "John Doe" SHIELD NO. 29615 was a duly sworn police officer of the New York City Police Department and was acting under the supervision of said department and according to his official duties. Defendant POLICE OFFICER "John Doe" SHIELD No. 29615 can be seen on Page 9 of Plaintiff's **Exhibit A**, attached hereto.

14.     That at all times hereinafter mentioned, Defendant POLICE OFFICER "John Doe" SHIELD NO. 11395 was a duly sworn police officer of the New York City Police Department and was acting under the supervision of said department and according to his official duties.

15.     That at all times hereinafter mentioned, Defendant POLICE OFFICER "John Doe" SHIELD NO. 3076 was a duly sworn police officer of the New York City Police Department and was acting under the supervision of said department and according to his official duties.

16.     That at all times hereinafter mentioned, Defendant NEW YORK CITY POLICE OFFICER "JOHN DOE SECOND PEPPER SPRAY OFFICER" was a duly sworn police officer of the New York City Police Department and was acting under the supervision of said department and according to his official duties.

17.     That at all times hereinafter mentioned, Defendant POLICE OFFICER "JOHN DOE INCIDENT COMMANDER" was a duly sworn police officer of the New York City Police Department and was acting under the supervision of said department and according to his official duties.

18.    Plaintiff ROBERT PLUMA will amend this complaint to identify Defendant POLICE OFFICER "John Doe" SHIELD NO. 26990, Defendant POLICE OFFICER "John Doe" SHIELD NO. 29615, Defendant POLICE OFFICER "John Doe" SHIELD NO. 11395, Defendant POLICE OFFICER "John Doe" SHIELD NO. 3076, Defendant POLICE OFFICER "JOHN DOE SECOND PEPPER SPRAY OFFICER", Defendant POLICE OFFICER "JOHN DOE INCIDENT COMMANDER", and the Defendant POLICE OFFICERS "John Does 1-50", as their complete identities can be established to a reasonable certainty.

19.    Defendant POLICE OFFICER O'LEARY, Defendant POLICE OFFICER VEGA, Defendant POLICE OFFICER "John Doe" SHIELD NO 26990, Defendant POLICE OFFICER "John Doe" SHIELD NO 29615, Defendant POLICE OFFICER "John Doe" SHIELD NO. 11395, Defendant POLICE OFFICER "John Doe" SHIELD NO. 3076, Defendant POLICE OFFICER "JOHN DOE SECOND PEPPER SPRAY OFFICER", Defendant POLICE OFFICER "JOHN DOE INCIDENT COMMANDER", and the Defendant POLICE OFFICERS "John Does 1-50" will be collectively referred to as the Defendant POLICE OFFICERS.

20.    That at all times hereinafter mentioned, Defendant CHIEF OF PATROL JAMES HALL was a duly sworn police officer of the New York City Police Department and was acting under the supervision of said department and according to his official duties.

21.    That at all times hereinafter mentioned, Defendant CHIEF OF DEPARTMENT JOSEPH ESPOSITO was a duly sworn police officer of the New York

City Police Department and was acting under the supervision of said department and according to his official duties.

22. That at all times hereinafter mentioned, Defendant DEPUTY INSPECTOR BRANDON DEL POZO was a duly sworn police officer of the New York City Police Department and was acting under the supervision of said department and according to his official duties.

23. That at all times hereinafter mentioned, Defendant POLICE SERGEANT CARL SORECO ("Defendant POLICE SERGEANT SORECO") was a duly sworn police sergeant of the New York City Police Department and was acting under the supervision of said department and according to his official duties.

24. That at all times hereinafter mentioned, Defendant LIEUTENANT MARESCA was a duly sworn police officer of the New York City Police Department and was acting under the supervision of said department and according to his official duties.

25. That at all times hereinafter mentioned, Defendant CHIEF THOMAS PURTELL was a duly sworn police officer of the New York City Police Department and was acting under the supervision of said department and according to his official duties.

26. That at all times hereinafter mentioned, Defendant CHIEF STEVEN ANGER was a duly sworn police officer of the New York City Police Department and was acting under the supervision of said department and according to his official duties.

27. That at all times hereinafter mentioned, Defendant CHIEF JAMES MCNAMARA was a duly sworn police officer of the New York City Police Department

7

and was acting under the supervision of said department and according to his official duties.

**28.**     That at all times hereinafter mentioned, Defendant DEPUTY INSPECTOR DANIEL MULLIGAN was a duly sworn police officer of the New York City Police Department and was acting under the supervision of said department and according to his official duties.

**29.**     That at all times hereinafter mentioned, Defendant CAPTAIN WILLIAM GARDNER was a duly sworn police officer of the New York City Police Department and was acting under the supervision of said department and according to his official duties.

**30.**     That at all times hereinafter mentioned, Defendant CAPTAIN WILLIAM TAYLOR was a duly sworn police officer of the New York City Police Department and was acting under the supervision of said department and according to his official duties.

**31.**     That at all times hereinafter mentioned, Defendant POLICE OFFICER KONSTANTINIDIS was a duly sworn police officer of the New York City Police Department and was acting under the supervision of said department and according to his official duties.

**32.**     That at all times hereinafter mentioned, Defendant ASSISTANT CHIEF GALATI was a duly sworn police officer of the New York City Police Department and was acting under the supervision of said department and according to his official duties.

**33.**     That at all times hereinafter mentioned, Defendant ASSISTANT CHIEF WEDLIN was a duly sworn police officer of the New York City Police Department and was acting under the supervision of said department and according to his official duties.

8

34.     That at all times hereinafter mentioned, Defendant ASSISTANT CHIEF MORRIS was a duly sworn police officer of the New York City Police Department and was acting under the supervision of said department and according to his official duties.

35.     That at all times hereinafter mentioned, DEPUTY CHIEF SHORTELL was a duly sworn police officer of the New York City Police Department and was acting under the supervision of said department and according to his official duties.

36.     That at all times hereinafter mentioned, Defendant DEPUTY CHIEF QUINN was a duly sworn police officer of the New York City Police Department and was acting under the supervision of said department and according to his official duties.

37.     That at all times hereinafter mentioned, Defendant DEPUTY CHIEF MCCARTHY was a duly sworn police officer of the New York City Police Department and was acting under the supervision of said department and according to his official duties.

38.     That at all times hereinafter mentioned, Defendant INSPECTOR BANE was a duly sworn police officer of the New York City Police Department and was acting under the supervision of said department and according to his official duties.

39.     That at all times hereinafter mentioned, Defendant INSPECTOR MCHUGH was a duly sworn police officer of the New York City Police Department and was acting under the supervision of said department and according to his official duties.

40.     That at all times hereinafter mentioned, Defendant DEPUTY INSPECTOR LEHR was a duly sworn police officer of the New York City Police Department and was acting under the supervision of said department and according to his official duties.

**41.**     That at all times hereinafter mentioned, Defendant DEPUTY
INSPECTOR TLOCZKOWSKI was a duly sworn police officer of the New York City
Police Department and was acting under the supervision of said department and
according to his official duties.

**42.**     That at all times hereinafter mentioned, Defendant LIEUTENANT
GUZMAN was a duly sworn police officer of the New York City Police Department and
was acting under the supervision of said department and according to his official duties.

**43.**     That at all times hereinafter mentioned, Defendant SERGEANT
PERKINS was a duly sworn police officer of the New York City Police Department and
was acting under the supervision of said department and according to his official duties.

**44.**     That at all times hereinafter mentioned, Defendant CAPTAIN
RAYMOND was a duly sworn police officer of the New York City Police Department
and was acting under the supervision of said department and according to his official
duties.

**45.**     That at all times hereinafter mentioned, Defendant SERGEANT
LAPLANCHE was a duly sworn police officer of the New York City Police Department
and was acting under the supervision of said department and according to his official
duties.

**46.**     That at all times hereinafter mentioned, Defendant SGT. SCIACCA was a
duly sworn police officer of the New York City Police Department and was acting under
the supervision of said department and according to his official duties.

**47.**     That at all times hereinafter mentioned, Defendant LIEUTENANT
CARRARA was a duly sworn police officer of the New York City Police Department

and was acting under the supervision of said department and according to his official duties.

48.     That at all times hereinafter mentioned, Defendant SERGEANT FALCONE was a duly sworn police officer of the New York City Police Department and was acting under the supervision of said department and according to his official duties.

49.     That at all times hereinafter mentioned, Defendant CAPTAIN CENTA was a duly sworn police officer of the New York City Police Department and was acting under the supervision of said department and according to his official duties.

50.     That at all times hereinafter mentioned, Defendant SERGEANT BARNES was a duly sworn police officer of the New York City Police Department and was acting under the supervision of said department and according to his official duties.

51.     That at all times hereinafter mentioned, Defendant SERGEANT MONAHAN was a duly sworn police officer of the New York City Police Department and was acting under the supervision of said department and according to his official duties.

52.     That at all times hereinafter mentioned, Defendant CAPTAIN GRANDSTAFF was a duly sworn police officer of the New York City Police Department and was acting under the supervision of said department and according to his official duties.

53.     That at all times hereinafter mentioned, Defendant SERGEANT MULLANEY was a duly sworn police officer of the New York City Police Department and was acting under the supervision of said department and according to his official duties.

**54.** That at all times hereinafter mentioned, Defendant LIEUTENANT JOE MILLER was a duly sworn police officer of the New York City Police Department and was acting under the supervision of said department and according to his official duties.

**55.** That at all times hereinafter mentioned, Defendant SERGEANT VILLANUEVA was a duly sworn police officer of the New York City Police Department and was acting under the supervision of said department and according to his official duties.

**56.** That at all times hereinafter mentioned, Defendant LIEUTENANT DIMEOLA was a duly sworn police officer of the New York City Police Department and was acting under the supervision of said department and according to his official duties.

**57.** That at all times hereinafter mentioned, Defendant LIEUTENANT MARTI was a duly sworn police officer of the New York City Police Department and was acting under the supervision of said department and according to his official duties.

**58.** That at all times hereinafter mentioned, Defendant SERGEANT SINGH was a duly sworn police officer of the New York City Police Department and was acting under the supervision of said department and according to his official duties.

**59.** That at all times hereinafter mentioned, Defendant LIEUTENANT DINEDA was a duly sworn police officer of the New York City Police Department and was acting under the supervision of said department and according to his official duties.

**60.** Defendant POLICE CHIEF OF PATROL JAMES HALL, Defendant POLICE CHIEF OF DEPARTMENT JOSEPH ESPOSITO, Defendant POLICE DEPUTY INSPECTOR BRANDON DEL POZO, Defendant POLICE LIEUTENANT MARESCA, Defendant POLICE CHIEF THOMAS PURTELL, Defendant POLICE

CHIEF STEVEN ANGER, Defendant POLICE CHIEF JAMES MCNAMARA, Defendant POLICE DEPUTY INSPECTOR DANIEL MULLIGAN, Defendant POLICE CAPTAIN WILLIAM GARDNER, Defendant POLICE CAPTAIN WILLIAM TAYLOR, Defendant POLICE OFFICER KONSTANTINIDIS, Defendant POLICE ASSISTANT CHIEF GALATI, Defendant POLICE ASSISTANT CHIEF WEDLIN, Defendant POLICE ASSISTANT CHIEF MORRIS, Defendant POLICE DEPUTY CHIEF SHORTELL, Defendant POLICE DEPUTY CHIEF QUINN, Defendant POLICE DEPUTY CHIEF MCCARTHY, Defendant POLICE INSPECTOR BANE, Defendant POLICE INSPECTOR MCHUGH, Defendant POLICE DEPUTY INSPECTOR LEHR, and Defendant POLICE DEPUTY INSPECTOR TLOCZKOWSKI, Defendant POLICE LIEUTENANT GUZMAN, Defendant POLICE SERGEANT PERKINS, Defendant POLICE CAPTAIN RAYMOND, Defendant POLICE SERGEANT LAPLANCHE, Defendant POLICE SGT. SCIACCA, Defendant POLICE LIEUTENANT CARRARA, Defendant POLICE SERGEANT FALCONE, Defendant POLICE CAPTAIN CENTA, Defendant POLICE SERGEANT BARNES, Defendant POLICE SERGEANT MONAHAN, Defendant POLICE CAPTAIN GRANDSTAFF, Defendant POLICE SERGEANT MULANEY, Defendant POLICE LIEUTENANT JOE MILLER, Defendant POLICE SERGEANT VILLANUEVA, Defendant POLICE LIEUTENANT DIMEOLA, Defendant POLICE LIEUTENANT MARTI, Defendant POLICE SERGEANT SINGH, Defendant POLICE SERGEANT CARL SORECO, and Defendant POLICE LIEUTENANT DINEDA. will be collectively referred to as Defendant NYPD COMMANDERS.

**61.**     That at all times relevant to this action, the ALL DEFENDANTS either personally or through their subordinates, agents, or employees, were acting under color of state law and/or pursuant with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

**62.**     Each and all of the acts of ALL DEFENDANTS  alleged herein were done by said defendants while acting within the scope and in furtherance of their employment by The City of New York, and were acting under the supervision of said department and according to their official duties.

## VI. FACTS COMMON TO ALL CLAIMS

**63.**     On the evening of December 31, 2011, the Plaintiff went to Zuccotti Park with his girlfriend.

**64.**     The Plaintiff and his girlfriend chose to go to Zuccotti Park to welcome in the New Year with hopeful reflection upon the efforts of Occupy Wall Street to bring greater democracy and a fairer economic system to our country.

**65.**     Zuccotti Park is open 24 hours, and the park was open that evening.

**66.**     At the time the Plaintiff arrived, the police had set up metal barricades that surrounded most or all of the park.

**67.**     Entry to the park was permitted only through gaps in these barricades, which were guarded by police.

**68.**     There was an overwhelming police presence at the park; however, the police permitted people to enter the park.

**69.**     Those entering the park were subjected to search, although such search was probably unlawful under the circumstances.

14

70.     The Plaintiff and his girlfriend entered the park and prepared to observe the approaching New Year.

71.     The Plaintiff and others peacefully remained in the park for some time.

72.     The Plaintiff became aware of activity in his vicinity.

73.     The Plaintiff, acting as a citizen journalist, began to film the event.

74.     The police used a metal barricade as a battering ram against a group of civilians within Zuccotti Park, of which the Plaintiff was a part.

75.     Specifically, they lifted the metal barricade off the ground to above waist height, and pushed the metal into the group, pushing the group of people backwards.

76.     The purpose of the using the metal barricade as battering ram on the group of people was to push the group of people, including the Plaintiff, backwards and to knock them down.

77.     Using the metal barricades, the police did in fact push the group of people backwards and knock some of them down.  One of those knocked down was the Plaintiff. Defendants POLICE OFFICER VEGA and JOHN DOE SECOND PEPPER SPRAY OFFICER POLICE OFFICER O'LEARY, Defendant POLICE OFFICER VEGA, Defendant POLICE OFFICER "John Doe" SHIELD NO 26990, Defendant POLICE OFFICER "John Doe" SHIELD NO 29615, Defendant POLICE OFFICER "John Doe" SHIELD NO. 11395, Defendant POLICE OFFICER "John Doe" SHIELD NO. 3076 performed these acts together and in concert.

78.     While the metal barricade was pushing into this group of people, two police officers discharged pepper spray across the group of people.

79.     The two officers that did this were Defendant POLICE OFFICER VEGA and JOHN DOE SECOND PEPPER SPRAY OFFICER.

80.     The police officers targeted the group of people as a whole.

81.     The pepper spray struck the group of people as a whole.

82.     The plaintiff, who was in the group of people, was struck by the pepper spray.

15

83.     As a result of being struck by the pepper spray and as a result of the use of the metal barricade as a battering ram, the plaintiff was blinded, incapacitated, pushed back and knocked down.

84.     The plaintiff sustained the spiral fracture to his hand when he fell.

85.     As a result of being blinded, incapacitated, pushed back and knocked down, the plaintiff's liberty of movement was restricted. The plaintiff was unable to walk without help. He was moved a few feet away, where he lay on the ground and vomited from the effects of the police assault.

86.     The plaintiff remained at the scene for a period of time before the incapacitating effects of the assault ameliorated sufficiently for the plaintiff to move on his own.

87.     The Plaintiff unsuccessfully sought medical help at the scene.

88.     Unable to find help, the Plaintiff and his girlfriend went to the hospital.

89.     The Plaintiff was found to have multiple spiral fractures of his left hand requiring surgery.

90.     The Plaintiff underwent surgery several days later.

91.     The Plaintiff underwent months of physical therapy.

92.     During his recovery, the Plaintiff was unable to perform basic tasks like tying his own shoelaces.

93.     The Plaintiff, who worked with computers, could not type effectively.

94.     When the Plaintiff attempted to perform the daily tasks of life that required two hands, he felt severe pain and discomfort.

**95.** When the Plaintiff attempted to perform the daily tasks of life that required the strength and precision of his dominant hand, he suffered not only pain and discomfort, but also frustration and anger.

**96.** The Plaintiff suffered fear and anxiety that his main hand, with its spiral fracture, would never get back to normal.

**97.** As a result of his injury, the Plaintiff ceased to participate in Occupy Wall Street events.

**98.** When the Plaintiff lost his job, it was hard for him to do the things necessary to find a job, with his broken dominant hand.

**99.** To this day, while the function of the Plaintiff's hand has returned to a n extent, the Plaintiff still feels discomfort and limited movement.

THE DEFENDANTS FAILED TO ADEQUATELY SUPERVISE<br/>DEFENDANT P.O. VEGA

**100.** On December 31, 2011, Defendant POLICE OFFICER VEGA was on duty at Zuccotti Park.

**101.** On December 31, 2011, Defendant POLICE OFFICER "JOHN DOE INCIDENT COMMANDER" was the member of the NYPD who was the highest uniformed ranking police supervisor assuming command.

**102.** As the Incident Commander of the Occupy Wall Street event at Zuccotti Park on December 31, 2011 through January 1, 2012, Defendant POLICE OFFICER "JOHN DOE INCIDENT COMMANDER" was responsible for the overall management of the policing activities concerning the event.

**103.** As described within Section 213-11 of the NYPD Patrol Guide, *Policing Special Events/Crowd Control*, as the Incident Commander of the OWS event at Zuccotti

Park on December 31, 2011 through January 1, 2012, Defendant POLICE OFFICER "JOHN DOE INCIDENT COMMANDER" was responsible for the command, control and coordination of all incident operations.

**104.** Defendant POLICE OFFICER "JOHN DOE INCIDENT COMMANDER" was the member of the NYPD who was ultimately responsible for the supervision of Defendant P.O. Christopher Vega.

**105.** The Defendant NYPD COMMANDERS had the ability to command and control POLICE OFFICER VEGA.

**106.** The Defendant NYPD COMMANDERS had the duty to command and control POLICE OFFICER VEGA to prevent his unlawful actions, narrated herein.

**107.** Defendant POLICE OFFICER VEGA lifted one of the metal barricades that the police had lined the park with and swung the barricade at a nearby demonstrator.

**108.** Photographs depicting the actions undertaken by Defendant POLICE OFFICER VEGA as described in the preceding paragraph are attached hereto as **Exhibit B.**

**109.** At some point before Defendant POLICE OFFICER VEGA swung the metal barricade at the demonstrator, Defendant POLICE OFFICER VEGA allegedly suffered a slight cut to his hand while carrying out his policing duties.

**110.** Upon information and belief, Defendant POLICE OFFICER VEGA blamed one or more of the OWS demonstrators for the injury.

**111.** Upon information and belief, the injury influenced Defendant POLICE OFFICER VEGA's mental and emotional state, causing him to become violent and aggressive.

112.    Following the alleged injury, Defendant POLICE OFFICER VEGA is angry because he has suffered a slight cut and blames a demonstrator.

113.    Defendant POLICE OFFICE VEGA carried out his aggression and violence against the demonstrators by lifting a metal barricade to hit one of the demonstrators in the face.

114.    Upon information and belief, Defendant POLICE OFFICER "JOHN DOE INCIDENT COMMANDER", the Defendant NYPD COMMANDERS, and the Defendant POLICE OFFICERS "John Does 1-50" with supervisory authority over Defendant POLICE OFFICER VEGA observed or should have observed that Defendant POLICE OFFICER VEGA was acting in an overly-aggressive and needlessly-violent manner.

115.    Upon observing Defendant POLICE OFFICER VEGA's conduct, Defendant NYPD COMMANDERS, Defendant POLICE OFFICER "JOHN DOE INCIDENT COMMANDER" and/or the Defendant POLICE OFFICERS "John Does 1-50" with supervisory authority over Defendant POLICE OFFICER VEGA should have removed Defendant POLICE OFFICER VEGA from his current policing activities.

116.    Defendant POLICE OFFICER VEGA should not have been permitted to continue to have contact with the public.

117.    Defendant POLICE OFFICER "JOHN DOE INCIDENT COMMANDER", Defendant NYPD COMMANDERS and the Defendant POLICE OFFICERS "John Does 1-50" with supervisory authority over Defendant POLICE OFFICER VEGA should have known that Defendant POLICE OFFICER VEGA had a propensity to engage in unjustified physical confrontations with civilians.

118.    The failure of the Defendant NYPD COMMANDERS, Defendant POLICE OFFICERS "John Does 1-50's" with supervisory authority over Defendant POLICE OFFICER VEGA and Defendant POLICE OFFICER "JOHN DOE INCIDENT COMMANDER's" failure to remove Defendant POLICE OFFICER VEGA from his current policing activities constituted negligent supervision.

119.    Had the Defendant POLICE OFFICERS "John Does 1-50", the Defendant NYPD COMMANDERS, and Defendant POLICE OFFICER "JOHN DOE INCIDENT COMMANDER" properly supervised Defendant POLICE OFFICER VEGA, Defendant POLICE OFFICER VEGA would have been prevented from engaging in the negligent, reckless, and needlessly violent and aggressive conduct that resulted in the Plaintiff's injury, as described herein.

### FIRST CLAIM FOR RELIEF

### DEPRIVATION OF FEDERAL CIVIL RIGHTS UNDER 42 U.S.C. § 1983

120.    Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

121.    All of the aforementioned acts of ALL DEFENDANTS, their agents, servants and employees, were carried out under the color of state law.

122.    All of the aforementioned acts deprived Plaintiff of the rights, privileges and immunities guaranteed to citizens of the United States by the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States of America, in violation of 42 U.S.C. § 1983.

**123.**    The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, with all of the actual and/or apparent authority attendant thereto.

**124.**    The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and the rules of The City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

**125.**    The Defendants, collectively and individually, while acting under color of state law, engaged in Constitutionally-violative conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

**126.**    The aforementioned violations of the plaintiff's Constitutional rights were committed by ALL DEFENDANTS.

**127.**    As a result of the above constitutionally impermissible conduct, Plaintiff was caused to suffer personal injuries, violation of his civil rights, emotional distress, anguish, anxiety, fear, humiliation, out-of-pocket costs, and other special damages.

**128.**    As a result of ALL DEFENDANTS' impermissible conduct, the Plaintiff demands judgment against ALL DEFENDANTS in an amount to be determined at trial, along with punitive damages, together with attorney's fees and costs.

SECOND CLAIM FOR RELIEF

EXCESSIVE FORCE UNDER 42 U.S.C. § 1983

**129.**    Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

**130.** Plaintiff was subjected to excessive and unjustified force in violation of his rights as guaranteed under the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

**131.** The aforementioned violations of the plaintiff's Constitutional rights were committed by the DEFENDANT POLICE OFFICERS.

**132.** The aforementioned violations of the plaintiff's Constitutional rights were committed by Defendant POLICE OFFICER O'LEARY, Defendant POLICE OFFICER VEGA, Defendant POLICE OFFICER "John Doe" SHIELD NO 26990, Defendant POLICE OFFICER "John Doe" SHIELD NO 29615, Defendant POLICE OFFICER "John Doe" SHIELD NO. 11395, Defendant POLICE OFFICER "John Doe" SHIELD NO. 3076, and Defendant POLICE OFFICER "JOHN DOE SECOND PEPPER SPRAY OFFICER", , as well as by those others of ALL DEFENDANTS who had personal involvement in the use of force on this Plaintiff, Defendant POLICE OFFICER "JOHN DOE INCIDENT COMMANDER", and the Defendant POLICE OFFICERS "John Does 1-50"..

**133.** As a result of the above constitutionally impermissible conduct, Plaintiff was caused to suffer personal injuries, violation of his civil rights, emotional distress, anguish, anxiety, fear, humiliation, out-of-pocket costs, and other special damages.

**134.** As a result of ALL DEFENDANTS' impermissible conduct, the Plaintiff demands judgment against Defendants in an amount to be determined at trial, along with punitive damages, together with attorney's fees and costs.

THIRD CLAIM FOR RELIEF

FAILURE TO INTERVENE UNDER 42 U.S.C. §1983

**135.** Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

**136.** ALL Defendants had an affirmative duty to intervene on Plaintiff's behalf to prevent the violation of his constitutional rights.

**137.** ALL Defendants were present when Plaintiff was injured, and chose not to intervene during any of the events leading up to Plaintiff's injury, despite having realistic opportunities to do so.

**138.** ALL DEFENDANTS chose not to intervene on Plaintiff's behalf to prevent the violation of his constitutional rights despite having had realistic opportunities to do so.

**139.** ALL DEFENDANTS chose not to intervene on Plaintiff's behalf to prevent the violation of his constitutional rights despite having substantially contributed to the circumstances within which Plaintiff's rights were violated by their affirmative conduct.

**140.** As a result, the Plaintiff's constitutional rights were violated.

**141.** As a result, the Plaintiff was caused to suffer personal injuries, violation of his civil rights, emotional distress, anguish, anxiety, fear, humiliation, out-of-pocket costs, and other damages.

**142.** As a result of Defendants' impermissible conduct, the Plaintiff demands judgment against Defendants in an amount to be determined at trial, along with punitive damages, together with attorney's fees and costs.

FOURTH CLAIM FOR RELIEF

## RETALIATION FOR FIRST AMENDMENT PROTECTED EXPRESSION
## UNDER 42 U.S.C. § 1983

**143.** Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

**144.** At or around the time that the Plaintiff came into contact with the Defendants, the Plaintiff had recently been and/or was currently engaging in protected speech or conduct, including but not limited to participating in a peaceful assembly, journalism in order to lawfully exercise their First Amendment protected rights.

**145.** The Defendants took adverse action against the Plaintiff in retaliation for lawfully exercising his First Amendment protected rights to free speech, expression, and association.

**146.** The actions of the Defendants heretofore described, were designed to and did cause bodily harm, pain and suffering in direct retaliation for Plaintiff's exercise of his civil and constitutional rights of free speech, free expression and expressive association as guaranteed by the First and Fourteenth Amendments to the United States Constitution as well as the Constitution of the State of New York.

**147.** The aforementioned violations of the plaintiff's Constitutional rights were committed by the Defendants.

**148.** As a result of the above constitutionally impermissible conduct, Plaintiff was caused to suffer personal injuries, violation of his civil rights, emotional distress, anguish, anxiety, fear, humiliation, out-of-pocket costs, and other special damages.

**149.** As a result of Defendants' impermissible conduct, the Plaintiff demands judgment against Defendants in an amount to be determined at trial, along with punitive damages, together with attorney's fees and costs.

WHEREFORE and in light of the foregoing, it is respectfully requested that the Court assume jurisdiction and:

[a] Invoke pendent party and pendent claim jurisdiction.

[b] Award appropriate compensatory and punitive damages.

[c] Empanel a jury.

[d] Award attorney's fees and costs.

[e] Award such other and further relief as the Court deems to be in the interest of justice.

DATED:     New York, New York
           December 16, 2014

Respectfully submitted,

David A. Thompson [dt3991]
STECKLOW COHEN & THOMPSON
217 Centre Street, 6th Floor
New York, New York 10013
Phone:     (212) 566-8000
Fax:       (212) 202-4952
DTHOMPSON@WYLIELAW.COM
ATTORNEYS FOR PLAINTIFF